53 A.3d 685

**TECH ONE ASSOCIATES, Appellant**

v.

**BOARD OF PROPERTY ASSESSMENT, APPEALS AND RE-VIEW OF ALLEGHENY COUNTY, West Mifflin Borough and West Mifflin Area School District, Appellees.**

Supreme Court of Pennsylvania.

Argued April 13, 2011.

Decided April 25, 2012.

440

442

John A. Straka III, Pittsburgh, for Tech One Associates.

John F. Cambest, Dodaro, Matta & Cambest, P.C., Pittsburgh, for West Mifflin Borough and West Mifflin Borough, West Mifflin Area School District.

Michael Henry Wojcik, Allegheny County Law Department, for Board of Property Assessment, Appeals and Review of Allegheny County.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

This appeal concerns the validity of a single unified assessment of both a tract of land, and the buildings of a shopping center, movie theater, and restaurant located on the land, where the land is owned by one business entity—Appellant Tech One Associates—and the buildings and surrounding improvements to the land were constructed by a second business entity—"Terra Century Associates" ("Lessee")—and owned by it under a long-term lease. For the reasons that follow, we affirm the lower courts' rulings that the taxing bodies in this matter—the Board of Property Assessment Appeals and Review of Allegheny County, the Borough of West Mifflin, and

the West Mifflin Area School District ("Appellees")—correctly treated the land, the buildings, and the improvements to the land as real estate subject to taxation under Section 201(a) of our Commonwealth's General County Assessment Law.[1] Additionally, we uphold the rulings of the lower courts that our previous decision in *In re Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992) (hereinafter "*Marple Springfield I*"), does not preclude the valuation of real estate which is owned as a leasehold interest, and that the market value for the land, buildings, and improvements, determined in the proceedings below, accurately reflects the "economic reality" of the impact of the long-term lease between Appellant and Lessee.

## I. Factual Background and Procedural History

The subject of this appeal is a 47.5 acre piece of land located in the Borough of West Mifflin, Allegheny County, Pennsylvania upon which is situated a community shopping center known as "Century Square Shopping Plaza," a multi-screen movie theater, and a restaurant. The shopping center is a one-story, 415,613 square foot building with 29 spaces for individual tenants. The movie theater and restaurant are each in buildings physically separate from the shopping center. Adjacent to the buildings are asphalt parking lots which are connected by private access roads to Lebanon Church Road. The land and buildings comprise one tax parcel, assigned by the Allegheny County Office of Property Assessment the parcel identifier number 312–N–150.

Appellant purchased the then-undeveloped land during the 1980's. In 1989, Appellant entered into a 50–year lease agreement, subsequently amended in 1990, with Lessee in a transaction that the trial judge in this matter, the Honorable R. Stanton Wettick, found to be "arm's length."[2] *Tech One Associates v. Bd. of Prop. Assessment Appeals*, No. BV02–002742, at 1 (Court of Common Pleas of Allegheny County,

---

1. 72 P.S. § 5020–101 *et seq.*

2. Lessee, Terra Century Associates, was not a participant in the proceedings below and is not a party to this appeal.

filed Dec. 27, 2007) (hereinafter "Common Pleas Court Opinion"). Lessee was given the right under this lease to construct buildings on the land and to make other improvements to the land, and, in the early 1990's, Lessee constructed the shopping center, movie theater, and restaurant, as well as their surrounding parking lots, lighting fixtures, and the access roads. The land, the buildings, and the improvements are referred to in the lease, collectively, as the "Premises." Lease, 12/19/90, at 3–5.

The lease guarantees Lessee the first opportunity to purchase any part of Appellant's interest in the premises which it elects to sell during the term of the lease, and it also gives Lessee a purchase option for the land on which the buildings sit, which it is entitled to exercise in the sixth month of year 49 of the lease.[3] If Lessee fails to exercise this purchase option, upon the termination of the lease, Appellant has the right to retake possession of the entire premises.

Judge Wettick determined that Lessee was required to pay Appellant $665,000 in rent annually for the entire term of the lease. The lease also required Lessee to pay all real estate taxes levied on the premises, and granted Lessee the option, at any time of its choosing, to assign all of the rights, title, and interests which it possessed under the lease, and, correspondingly, required any assignee to assume Lessee's obligations under the lease. Lessee was also permitted to sublease part or all of the premises to a tenant for any use permitted by the lease.

Appellee, the Board of Property Assessment, Appeals and Review of Allegheny County ("Board of Assessment Appeals"), assessed the total value of the land, buildings, and improvements at $30,984,000 in 2001, and at $32,477,300 for each of the tax years 2002–2005.[4] Appellant appealed these

3. The lease provides that the purchase price for the land at that time would be its "fair market value" which it specifies is to be determined by assuming that the land is vacant and unencumbered by the lease and, hence, "available for its highest and best use." Lease, 12/19/90, at 70.

4. The 2001 assessment valued the land at $7,067,000, and $23,917,700 for the buildings. For each of the tax years 2002–2005, the land

total valuations to the Court of Common Pleas of Allegheny County.[5] Appellees, the Borough of West Mifflin, and the West Mifflin Area School District, were granted leave to intervene in the appeals, inasmuch as the tax revenue they receive annually from property subject to taxation was dependent on the assessed values of such property as determined by the Board of Assessment Appeals.[6]

On April 21, 2005, an evidentiary hearing was held before two members of the Allegheny County Board of Viewers.[7] At this hearing, Appellant presented the testimony of licensed real estate appraiser Anthony Barna regarding the market value of Appellant's ownership interest in the land—the "leased fee"[8]—for the tax years 2001–2005. To arrive at an opinion of the worth of the leased fee, Barna testified that he utilized a "capitalization of income approach"[9] which involved dividing the annual base rental amount received by Appellant under the lease ($665,000) by a 7% capitalization rate, which rate represented Barna's estimation of the value to Appellant of both the income stream over the life of the lease and the value of its reversionary interest at the end of the lease term.

remained assessed at $7,067,000, but the value of the buildings rose to $25,410,300.

5. Under Section 518.1 of the General County Assessment Law, 72 P.S. § 5020–518.1, any owner of real estate who "may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property" by the Board of Assessment Appeals may appeal to the court of common pleas.

6. 72 P.S. § 5020–520 grants the corporate authorities of any borough or school district "which may feel aggrieved by any assessment of any property or other subject of taxation for its corporate purposes" the right to appeal.

7. Under 72 P.S. § 5020–518.1(c), the Court of Common Pleas may refer assessment appeals to the Board of Viewers.

8. The "leased fee" is formally defined as "[a]n ownership interest held by a landlord with the rights of use and occupancy transferred by the lease to others." American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 83 (12th ed.2001).

9. Broadly defined, an "income capitalization approach" to valuation is "[a] set of procedures through which an appraiser derives a value indication for an income-producing property by converting its anticipated benefits (cash flows and reversion) into property value." *The Dictionary of Real Estate Appraisal* 143 (4th ed.2002).

Valuation of Anthony C. Barna, 6/10/04, at 24.[10] This calculation yielded an appraised value for the leased fee of $9,500,000 for each of the tax years 2001–2005.

In performing this appraisal, Barna testified that he was guided by the decision of the Commonwealth Court in the case of *In re Appeal of Marple Springfield Center, Inc.*, 654 A.2d 635 (Pa.Cmwlth.1995) (hereinafter *"Marple Springfield II "*). In that case, the Commonwealth Court held that the rental income from an appliance store constructed by a commercial chain on property leased to it by a limited partnership, which, in turn, leased the property from a corporate entity that owned the land, could not be included in the fair market value of the corporate entity's property for purposes of computing its tax assessment, since the corporate entity received no additional rent as a result of the new construction, and it continued to receive only the fixed rental payment provided by its lease agreement with the limited partnership. Because of Barna's interpretation of *Marple Springfield II*, he assigned no value to the improvements made to the property by Lessee in his appraisal of the leased fee, since, in his view, under the "economic reality" [11] of the long term lease, Appellant received no economic benefits from those improvements as they did not affect the amount of rent Appellant received, which remained fixed under the terms of the lease.[12] N.T. Assessment Hearing, 4/21/05, at 14.

In turn, Appellees presented to the Board of Viewers the testimony of certified real estate appraiser Mark Ackerman. Ackerman recounted that in his appraisal, he used the capitalization of income approach to calculate, for each tax year, a

10. The appraisal reports of both parties' experts were made part of the record by the Board of Viewers.

11. This term derives from our Court's decision in *Marple Springfield I* (discussed at greater length herein) in which we recognized that the "economic realities of commercial real estate transactions" require that valuation of land encumbered by a long term lease must consider the impact of the lease on the fair market value of the land which a buyer of the land would pay. 530 Pa. at 127, 607 A.2d at 710.

12. The actual rental income specified in a lease is referred to as "contract rent." The Appraisal Institute, *The Dictionary of Real Estate Appraisal*, supra note 9, at 63.

total market value for all of the property associated with the tax parcel, ownership of which in this case was divided between the leased fee interest of Appellant and Lessee's leasehold interests. Consequently, unlike Barna's valuation, Ackerman included the sum of his valuation of Appellant's leased fee interest in the land **and** the valuation of Lessee's leasehold interests in the shopping center buildings and improvements.[13] *Id.* at 55. For the valuation of the leased fee, Ackerman assumed a minimum net rental income to Appellant of $651,-770 [14] in each of the tax years 2001–2005, which he divided by a capitalization rate of 7% to yield a value of $9,300,000 for every year of that period. Ackerman determined the value of Lessee's leasehold interests for each tax year in question by dividing the net income Lessee received from subleases to commercial tenants by an overall capitalization rate of 10%, which rate reflected Ackerman's evaluation of factors such as the location and condition of the property, the financial risk and cost of financing to Lessee, the tax rate, and general market conditions influencing the price of rent and vacancy rates. *See* Valuation by Mark D. Ackerman, 2/15/05, at 11–14. Ackerman testified that these calculations produced a value for Lessee's leasehold interests of $26,685,000 for 2001 and 2002, $19,350,000 for 2003, $13,200,000 for 2004, and $21,350,000 for 2005.[15]

In its ruling, the Board of Viewers accepted Appellant's argument that *Marple Springfield I* and *Marple Springfield II* were "controlling," and, pursuant to its interpretation of

13. A leasehold interest is "[t]he interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term under certain conditions." *The Dictionary of Real Estate Appraisal*, supra note 9, at 162.

14. Ackerman arrived at this figure by deducting $6,580 from the base rental income of $665,000 for the management expenses Appellant incurred in maintaining the property.

15. Barna also testified, over objection, since it was not included in his appraisal report prepared for the assessment hearing, that he had conducted a separate appraisal of the value of Lessee's leasehold interests which was not included in his appraisal report for the leased fee, and he assigned a value to those interests of $14,400,000 for 2002, $11,200,000 for 2003 and $15,500,000 for 2004. N.T. Assessment Hearing, 4/21/2005, at 50.

those decisions, adopted the value of Barna's appraisal of Appellant's leased fee interest in the land, and only that interest, as the fair market value of the entire tax parcel—reducing its assessed value to $9,500,000 for the tax years 2001–2005. Report of Board of Viewers, 6/10/05, at 3–4.

Appellees filed timely objections, contending, *inter alia*, that since the improvements to the property made by Lessee, and owned by it as leasehold interests, are proper subjects of taxation under Section 201(a) of the General County Assessment Law, 72 P.S. § 5020–201(a) ("Section 201(a)"), the Board of Viewers erred both by failing to assign a fair market value to them, and by failing to include their worth in the total valuation of the entire taxable realty. Appellees further maintained that the Board of Viewers misinterpreted the holdings of both *Marple Springfield* decisions in that neither decision precluded the inclusion of the market value of such improvements in a determination of the fair market value of realty for tax assessment purposes even though they were owned by Lessee as leasehold interests. Appellees additionally asserted that the result of the Board of Viewers decision violated the Uniformity Clause of the Pennsylvania Constitution [16] since it would allow identical improvements made to land to be taxed differently depending on whether they were owned outright by the landowner or leased by the landowner to a different entity.

The Allegheny County Court of Common Pleas set aside the report of the Board of Viewers and entered an order accepting Ackerman's appraisal as the market value of the entire tax parcel for each of the tax years 2001–2005. In his Pa.R.A.P. 1925(a) opinion, Judge Wettick observed that Lessee, rather than Appellant, had the greater interest in the outcome of the litigation since it was responsible under the lease for paying all of the real estate taxes for the entire property. In his opinion, Judge Wettick further remarked that he had specifi-

---

**16.** This provision of the Pennsylvania Constitution states:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

Pa. Const., art. 8, § 1.

cally asked counsel for Appellant at argument whether Appellant was raising a procedural or substantive claim, i.e., whether Appellant was arguing "that the improvements could be assessed if there had been a separate assessment of the improvements which identified Terra as the owner of the improvements," or whether Appellant was contending that it "was the only owner of any property that is subject to a real estate tax[.]" Common Pleas Court Opinion, at 4. Because Appellant argued that there could only be a single tax assessment to it as the owner and lessor of the property, and that the improvements to the property could not be taxed to Lessee, Judge Wettick considered the only question for his resolution to be "whether the single assessment should include the value of the buildings and other improvements which the tenant has made to the property." Common Pleas Court Opinion, at 5. Judge Wettick subsequently answered this question in the affirmative.

Judge Wettick began his analysis by reference to our Court's decision in *Downingtown v. Chester County Bd. of Prop. Assessments*, 590 Pa. 459, 475, 913 A.2d 194, 204–205 (2006), wherein we held that a statute which required the use of an "established predetermined ratio" of assessed property value to actual fair market value violated the Uniformity Clause since it resulted in certain taxpayers being subjected to a higher tax burden despite the fact there was no "legitimate distinction" for classifying their property differently from other similar property. Judge Wettick viewed *Downingtown* as establishing the basic principle that, in order for constitutionally mandated uniformity of tax assessments to be achieved, comparable properties should be assessed at the same percentage of assessed value to market value, and, thus, *Downingtown* forbade the use of any assessment system which is not constructed to assess comparable properties in a similar fashion. Consequently, Judge Wettick reasoned that, since Appellant could point to no other assessment of a shopping center in Allegheny County which did not include both the value of the land and the values of buildings and other improvements, allowing an exception to this scheme of

taxation in situations where the improvements were made by a lessee and not the owner of the land would be violative of the Uniformity Clause and, also, of the prohibition against creating tax exemptions which are not otherwise permitted under the Pennsylvania Constitution.[17]

Judge Wettick observed that these constitutional problems may be avoided by reasonably construing the relevant provisions of the General County Assessment Law in a manner which achieves the goals of the legislature. He pointed out that a construction that accounts for the value of the improvements made to the property by a lessee is possible because Section 201(a) of the General County Assessment Law permits the assessment of all "real estate," which term includes buildings and parking lots. Since another provision of the General County Assessment Law, 72 P.S. § 5020–402 ("Section 402"), further requires that real estate be assessed at its actual value, Judge Wettick viewed these statutory provisions as acting in concert to prohibit the use of an assessment method which does not consider the value of buildings and other improvements.

Judge Wettick rejected Appellant's argument that *Marple Springfield I* requires that the entire assessment of the land, and the improvements thereon, be based only on the amount of income Appellant received from its lease with Lessee. He found that the issue in *Marple Springfield I* was different as that case addressed only the question of whether market rent or contract rent was to be used in valuing improvements. Judge Wettick determined that "[n]othing in the opinion indicated that a county may use a method of assessing property that does not consider the value of buildings and other improvements." Common Pleas Court Opinion, at 8.

Judge Wettick further distinguished another case relied upon by Appellant—the Commonwealth Court decision in *In*

17. See Pa. Const., art. 8, § 2 (specifying conditions under which real property may be wholly exempted from taxation or subject to reduced rates of taxation) and Pa. Const., art. 8, § 5 (declaring any law exempting property from taxation, other than as permitted by art. 8, § 2, to be "void.").

*re Assid,* 842 A.2d 995 (Pa.Cmwlth.2004). In that case, the Commonwealth Court held that *Marple Springfield I* required that the assessment of land, whose owner leased the land to a limited partnership but remained responsible for paying all property taxes under the lease, should take into consideration the impact of the lease on the value of, the "taxpayer's property." Thus, he reasoned such property should have been valued using the capitalization of income approach and not the cost approach used by the taxing authority. Judge Wettick did not view *Assid* as requiring the capitalization of income approach mandated by *Marple Springfield I* to be used whenever a tenant in a long-term lease makes improvements to property, as (1) counsel for the taxing authority in that case had *conceded* that the capitalization of income approach was proper, and (2) the taxing authority was precluded from filing a brief with the Commonwealth Court which, consequently, did not have the benefit of considering the arguments presented by Appellees in the instant matter. Common Pleas Court Opinion, at 10.

Appellant appealed to the Commonwealth Court which, in a divided *en banc* decision authored by then Judge, now President Judge, Pellegrini, affirmed the court of common pleas.[18] *See Tech One Assoc. v. Bd. of Prop. Assessment, Appeals and Review,* 974 A.2d 1225 (Pa.Cmwlth.2009) (hereinafter *"Tech One "*). The court rejected Appellant's contention that *Marple Springfield I* governed the outcome of this appeal, observing that there were key differences between the economic and legal realities of that case and the present one. Principally, the Commonwealth Court pointed out that, in *Marple Springfield I*, the lessee was not responsible for all real estate taxes. The court noted:

> If a lessee is responsible for all real estate taxes, the landowner's economic reality would not change because if the value of the leased premises increased for whatever reason,—new buildings went up or market rents in-

18. Judge Pellegrini was joined by then-President Judge Leadbetter, and Judges Cohn Jubelirer, Simpson and Butler in the majority. Judge McGinley authored a dissenting opinion, joined by Judge Leavitt.

creased—the lessee would solely be responsible for the value of the landowner's interest in the real property, not the landowner, who would receive the bargain for the amount under the lease, without deductions for taxes.

*Tech One,* 974 A.2d at 1229. The court also found the legal realities to be different in this case as, in its view, the value of the shopping center, land, and buildings was placed at issue in *Marple Springfield I,* and the landowner in that case was not advancing the argument made by Appellant that the buildings should remain untaxed because they were built on leased property.

The court next addressed what it perceived as Appellant's central contention: that the leasehold improvements were not taxable "real estate" under the General County Assessment Law, even though they were worth millions of dollars. The court first looked to Section 402(a) of the General County Assessment Law, which obligates assessors to value "all objects of taxation." *Tech One,* 974 A.2d at 1230 (quoting 72 P.S. § 5020–402(a)). The court found significant the fact that Section 402(a) obliged assessors to use, as one of the three methods of valuing real property required by the statute,[19] the "cost approach" to valuation, which the court stated was "an approach only applicable to valuation of improvements to real estate and not just land itself." *Tech One,* 974 A.2d at 1230. The court further explained that "objects of taxation" are defined by Section 201(a) of the General County Assessment Law as "all real estate" which includes "buildings, lands, . . ., and all other real estate not exempt by law from taxation." *Tech One,* 974 A.2d at 1230 (quoting 72 P.S. § 5020–201(a)). Thus, the court reasoned:

Through these provisions, the General Assembly directed the assessors to assess real estate—including lands and buildings. To make that determination, who owns it and what are the ownership interests in the land—a fee simple,

19. The other two methods are the comparable sales and income approach to valuation.

a fee simple determinable, a leasehold interest or month-to-month lease are irrelevant.

*Tech One,* 974 A.2d at 1230.

The court also upheld Judge Wettick's finding that excluding real property from taxation that was built and owned by a lessee pursuant to a long-term lease, and not by the owner of the underlying land, would violate the Uniformity Clause of the Pennsylvania Constitution. The court rebuffed Appellant's suggestion that *Marple Springfield I* allowed identical property to be treated differently for real estate tax purposes depending on whether it was leased or not, as it found the issue of whether such a classification would violate the Uniformity Clause was not present in that case. The court remarked that, in other decisions where our Court has considered the uniformity issue, we have held that "a tax must be applied upon similar kinds of property with substantial equality of the tax burden on all members of the class." *Tech One,* 974 A.2d at 1231 (citing *Amidon v. Kane,* 444 Pa. 38, 51, 279 A.2d 53, 60 (1971)). Thus, the court determined that, because the land and buildings are objects of taxation, there is an insufficient basis to tax them differently just because different parties own them. To countenance such disparate taxation, the court reasoned, would be to, in effect, adopt a different class of buildings—those that are leased—which are exempt from taxation, and this would violate Article 8, Section 2 of the Pennsylvania Constitution.

In a dissenting opinion, Judge McGinley stated that he would have reversed the decision below on the basis of *Marple Springfield I* and *Assid.* He expressed his belief that both decisions were premised on the principle that "the proper inquiry in any valuation should focus on the market value of the property exposed for sale 'as is'." *Tech One,* 974 A.2d at 1232 (McGinley, J., dissenting) (quoting Bert M. Goodman, *Assessment Law and Procedure in Pennsylvania* 199–200 (2008)). Therefore, according to Judge McGinley, "[s]ince a property is only worth what an investor-buyer could earn from it, a property encumbered by a long-term lease with a fixed rent must be valued based on the income it will yield to a

purchaser." *Tech One*, 974 A.2d at 1232. Hence, in Judge McGinley's view, the economic reality of the long-term lease in the present situation meant that a prospective buyer of the property would be limited by its terms to receiving as income from the property only the fixed rent provided for by the lease, so any valuation of the property must reflect this limitation. Judge McGinley opined that any buildings and other improvements—even if he considered them to be of the magnitude of the Taj Mahal or the Empire State Building— would not affect the amount of rent the owner of the land would receive under the lease; thus, he reasoned Judge Wettick should not have included their value in the assessment.

Our Court granted allowance of appeal to consider the following two questions:

1. Whether, for real estate taxation purposes, the "economic reality test" announced in *In re Appeal of Marple Springfield*, 530 Pa. 122, 607 A.2d 708 (1992) [*Marple Springfield I* ] applies to establish the fair market value of an improved property encumbered with a long-term lease which grants the lessee ownership of buildings and other improvements on the land.

2. Whether the Uniformity Clause of the Pennsylvania Constitution requires an improved property encumbered with a long-term lease, which grants the lessee ownership of buildings and other improvements on the land, to be taxed in the same manner as a similar, but unencumbered, property.

*Tech One Assoc. v. Bd. of Prop. Assessment Appeals and Review*, 607 Pa. 323, 324, 6 A.3d 499, 499 (2010) (order).

## II. Analysis

### A. Valuation of Property Encumbered by Long–Term Lease

■ We first consider how our holding in *Marple Springfield I* impacts the valuation of the property which is the subject of this appeal. With regard to this question, Appellant

argues that, since there is no legislative authority to subject a leasehold to *ad valorem* [20] taxation, the "economic reality" test of *Marple Springfield I* is the proper test to use to establish the fair market value of property encumbered by a long-term lease. Appellant concedes that buildings are included in the definition of "real estate" contained in Section 201(a) of the General County Assessment Law, but it also argues that the term "real estate" under this statute includes only "ground rents," [21] but not leasehold payments. Citing to our Court's decision in the case of *Independent Oil and Gas Ass'n v. Bd. of Prop. Assessment Appeals of Fayette County*, 572 Pa. 240, 814 A.2d 180 (2002), discussed at greater length herein, Appellant posits that, because leasehold interests have been excluded from the enumerated subjects of taxation in Section 201(a), all leasehold interests are not subject to real estate taxation. Appellant propounds that our Court, in recognition of the fact that only the owner's interest in the leased fee may be taxed, developed the "economic reality" test of *Marple Springfield I.*

Appellant, quoting at length from Judge McGinley's dissent below, contends that application of this test is necessary to recognize the economic realities that exist whenever a long-term lease, entered into in an arm's-length transaction, encumbers a property. These realities are that the maximum value which can be achieved in any sale of such an encumbered property is diminished by the fact that the purchaser is restricted to receiving only the value of the lease payments and the reversionary interest. Appellant maintains that, because its expert properly used this "economic reality" test to calculate the value of Appellant's interest in the property, the

**20.** *Ad valorem* means "according to value" and, thus, an *ad valorem* tax on property is a tax assessed which is proportional to the property's value. Black's Law Dictionary 59 (8th ed.).

**21.** Our Court has defined "ground rent" as "an incorporeal hereditament ... an interest in land distinct and separate from the land out of which it issues." *Pronzato v. Guerrina*, 400 Pa. 521, 523 n. 1, 163 A.2d 297 n. 1 (1960). "A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent." *Id.* Thus, a ground rent estate is considered a form of real property. *Juvenal v. Patterson*, 10 Pa. 282 (1849).

lower courts erred in failing to similarly apply the test and failing to uphold the valuation of the Board of Viewers, which adopted its expert's valuation.

Appellees respond by asserting that Appellant is seeking to apply the "economic reality" principle discussed in *Marple Springfield I* and *Marple Springfield II* to the facts of the case at bar in an attempt to avoid, altogether, taxation of the $26,000,000 worth of buildings Lessee has erected. Appellees contend this reliance on that principle to establish the proposition that the value of improvements are not taxable is erroneous, citing the recitation by the majority in the Commonwealth Court's opinion below of the fundamental differences in the economic and legal realities of *Marple Springfield I* and the present case—namely, that there was no indication in *Marple Springfield I* that Lessee was responsible for payment of the taxes, and the landowner in that case was not arguing, as Appellant is here, that the value of the improvements should be untaxed because they are built on leased property.

Appellees maintain that Judge Wettick was correct in his conclusion that there was nothing in the *Marple Springfield I* opinion which permitted a county to use a method of property assessment that did not consider the value of the buildings and the other improvements because they were made by tenants. Appellees assert that Judge Wettick's conclusion is buttressed by the Commonwealth Court's previous recognition that *Marple Springfield I* did not preclude the use of the value of the leasehold interests in computing fair market value of a property, and that the American Institute of Real Estate Appraisers has indicated that " '[t]he sum values of the fee subject to the leases and leasehold interest tend to be the same as the value of the property free and clear.' " Appellee's Brief at 4 (quoting *In re Appeal of Cynwyd Investments,* 679 A.2d 304, 309 n. 10 (Pa.Cmwlth.1996)) (in turn quoting *The Appraisal of Real Estate* 469 (7th ed.1978)).

Appellees additionally discount Appellant's reliance on *Independent Oil and Gas Ass'n, supra,* noting that, as the Commonwealth Court majority found, Section 201(a) specifically includes buildings and lands as real estate which are to be

assessed and subject to taxation, and, further, that the Commonwealth Court was correct in its conclusion that, in making such an assessment of taxable property, "the assessor should not be concerned with who owns the property and what the ownership interest . . . may be." Appellee's Brief at 6.

Appellees also cite to an earlier case from the Commonwealth Court, *Venango Sav. and Loan Ass'n v. County of Venango*, 73 Pa.Cmwlth. 313, 457 A.2d 1340 (1983) (holding that a county may properly assess a tenant under a long-term ground lease for the value of its interest in the land and buildings under the lease since factual circumstances indicated that title to the buildings remained in the tenant for the term of the lease), as support for the proposition that the interest of a lessee under a long-term lease for land is taxable where there are indicia that the title to the improvements and the leasehold would remain in the lessee during the entire term of the lease. Appellees ultimately request that we hold they are authorized to assess and collect taxes on both the land involved in this appeal, and the improvements to the land, as provided for by the General Assessment Law and, also, to rule that *Marple Springfield I* does not bar such taxation.

 We begin our analysis of this issue by articulating the proper standard of review which guides our consideration. In reviewing a trial court's decision in a tax assessment appeal, we will reverse that decision only if the trial court committed an abuse of discretion, an error of law, or where its decision is unsupported by the evidence. *Safe Harbor Water Power Corp. v. Fajt*, 583 Pa. 234, 253 n. 12, 876 A.2d 954, 966 n. 12 (2005). Because the issues we consider are questions of law, our standard of review is *de novo*, and our scope of review is plenary. *Clifton v. Allegheny County*, 600 Pa. 662, 683, n. 17, 969 A.2d 1197, 1209 n. 17 (2009).

 The power of a county to tax property derives from a legislative enactment by our General Assembly. *Coolspring Stone Supply v. County of Fayette*, 593 Pa. 338, 345, 929 A.2d 1150, 1154 (2007); *see also Mastrangelo v. Buckley*, 433 Pa. 352, 363, 250 A.2d 447, 453 (1969) ("To determine whether a

municipality possesses the power to tax and, if so, the extent of such power, recourse must be had to the acts of the General Assembly."). Specifically, authority for Allegheny County to impose property taxes, to determine the value of property subject to taxation, and to set the rates of taxation for such property is the General County Assessment Law, 72 P.S. §§ 5020–1 to 5020–602, and the Second Class County Assessment Law, 72 P.S. §§ 5452.1–5341.21. Sections 201 and 402 of the General County Assessment Law establish, respectively, what type of property is subject to taxation, and, if property is subject to taxation, the methodology of valuing it for tax purposes.[22]

As taxing statutes, Sections 201 and 402 must be strictly construed against the government, and any doubt or ambiguity in the interpretation of their terms must, therefore, be resolved in favor of the taxpayer. 1 Pa.C.S.A. § 1928; *Skepton v. Borough of Wilson*, 562 Pa. 344, 350, 755 A.2d 1267, 1270 (2000). However, it is equally axiomatic that, if the words of a taxing statute are clear and free of all ambiguity, then we may not disregard the letter of the statute in the pretext of pursuing its spirit. *Id.* (citing 1 Pa.C.S.A. § 1921).

With these principles in mind, we examine the text of Section 201(a) which enumerates the specific types of property subject to taxation as real estate:

**§ 5020–201. Subjects of taxation enumerated**

The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:

(a) All real estate, to wit: Houses, house trailers and mobilehomes buildings [sic] permanently attached to land or connected with water, gas, electric or sewage facilities,

---

**22.** Since the Second Class County Assessment Law does not repeal any portion of the General County Assessment Law unless it is inconsistent, *see* 72 P.S. § 5452.20, and inasmuch as there is no inconsistency between Sections 201 and 402 and any provision of the Second Class County Assessment Law, these statutory sections determine what type of property in Allegheny County is an appropriate subject of taxation and the method for assessing the value of such taxable property.

*buildings, lands,* lots of ground and ground rents, trailer parks and *parking lots,* mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, all office type construction of whatever kind, that portion of a steel, lead, aluminum or like melting and continuous casting structures which enclose, provide shelter or protection from the elements for the various machinery, tools, appliances, equipment, materials or products involved in the mill, mine, manufactory or industrial process, and all other real estate not exempt by law from taxation.

72 P.S. § 5020–201 (emphasis added).

Presently, the parties do not dispute that the land on which the community shopping center at the heart of this dispute is situated constitutes taxable "real estate," as "lands" are unambiguously included in Section 201(a). Appellant also acknowledges, as it must, that "buildings" and "parking lots" are explicitly classified as "real estate" under the plain terms of Section 201(a), and, additionally, it does not contest Judge Wettick's finding that the other improvements to the property constructed by Lessee, such as the light fixtures [23] and access roads, constitute "real estate" under Section 201(a). Appellant nevertheless contends the shopping center buildings and the improvements are not taxable real estate on the basis that they were owned by Lessee as leasehold interests. As recounted above, Appellant relies on its interpretation of our Court's decision in *Independent Oil and Gas Ass'n, supra,* to support its sweeping contention that leasehold interests in real estate are not taxable under Section 201(a). Appellant, however, misconstrues our holding in that decision.

■ In *Independent Oil and Gas Ass'n,* our Court was called upon to consider whether Section 201(a) authorized the imposition of real estate taxes on leasehold interests in oil and gas. Our Court examined the text of Section 201(a) and concluded that the meaning of the general term "real estate,"

---

**23.** *See generally Clayton v. Lienhard,* 312 Pa. 433, 436–437, 167 A. 321, 322 (1933) (explaining circumstances under which chattels affixed to real estate may be considered part of the real estate).

as used therein, was, pursuant to the *ejusdem generis* principle,[24] limited by the statute's additional listing of particular items of property. Thus, we deemed Section 201(a) to authorize taxation of only those specific types of property named therein. As a result, we rejected the Commonwealth Court's finding that the leasehold interests in oil and gas were "lands," noting "the dissimilarity between the **nature** of oil and gas and those items which the General Assembly saw fit to enumerate as the proper subject of taxation." *Independent Oil and Gas Ass'n*, 572 Pa. at 247, 814 A.2d at 184 (emphasis added). Accordingly, *Independent Oil and Gas Ass'n* stands for the proposition that it is the elemental physical characteristics of a particular property, i.e., its structure and features, which are determinative of whether it constitutes one of the specifically enumerated types of real estate in Section 201(a). *See Coolspring*, 593 Pa. at 347, 929 A.2d at 1155 ("[T]he physical characteristics of the fuels was central to [our] Court's ultimate holding [in *Independent Oil and Gas Ass'n*] that oil and gas do not fall within the term 'lands' listed in Section 201 of the General County Assessment Law."). As discussed below, the *manner* in which the property is *owned* is wholly irrelevant to this determination. Thus, Appellant's contention that *Independent Oil and Gas Ass'n* exempts from taxation under Section 201(a) leasehold interests in real estate is incorrect.[25]

**24.** This rule of statutory analysis has been codified by Section 1903(b) of the Statutory Construction Act which provides: "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.C.S.A. § 1903(b).

**25.** Likewise, we reject Appellant's contention that, because the lease payments themselves are not included in Section 201(a) as a subject of taxation, while ground rents are included, this indicates an intent by the legislature to exempt leased real estate from taxation. It is not the lease payments which are the subjects of taxation under Section 201(a), but, rather, the leased real estate. Further, as we explained previously, *see supra* note 21, a ground rent is considered an interest in land, and, hence, is a particular form of real estate; thus, its inclusion with other types of real estate listed in Section 201(a) is unremarkable. A required lease payment, by contrast, is not a form of real estate but, rather, a contractual obligation; thus, we attach no significance to its omission from Section 201(a)'s enumeration of specific kinds of real estate subject to taxation.

Indeed, over a century ago, in *Appeal of Pennsylvania Stave Co.*, 236 Pa. 97, 84 A. 761 (1912), we firmly rejected the notion that buildings and other improvements to land are not subject to county real estate taxation simply because they are owned by a tenant who occupies the land under a long-term lease. In that case, 26 acres of land were owned by a lumber company which leased the land to a barrel stave manufacturer which constructed a sawmill, houses, shops, sheds, and a barn. These structures and the land were assessed by Bradford County as real estate for purposes of taxation under a statutory predecessor to Section 201(a), which provided:

> [A]ll real estate, to wit: houses, lands, lots of ground and ground rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries and ferries, wharves, and all other real estate not exempt by law from taxation ... shall be valued and assessed and subject to taxation for ... all state and county purposes whatsoever.

Act of April 29, 1844, § 32, P.L. 486 (the "1844 Act"). The manufacturer appealed the assessment—arguing, *inter alia,* that it was merely a tenant who built the structures for a temporary purpose and that they would be removed once its work was finished, hence the title to the taxable interest—the land—ultimately remained in the lumber company.

Our Court found the fact that the buildings and improvements were owned by the tenant for the term of the lease did not alter their status as taxable real estate under the plain terms of the 1844 Act:

> The stave company, under its contract with the lumber company, has an estate for a term of years in the 26 acres of land, and this estate, together with the permanent improvements thereon, is a proper subject of taxation under the [1844] [A]ct ... which ... provides for the taxation as real estate of 'houses, lands, lots of ground, and ground rents, mills, manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries and ferries, wharves,' and other like property. It will be noticed that under the general term 'real

estate' the act specifically names many kinds of structures to be included as proper subjects of taxation. Houses, mills, and manufactories of all kinds are included in the enumeration, with the evident intention of making them subjects of taxation as real estate. There is no suggestion that the taxation of houses, mills, and factories is made to depend upon the kind or character of the estate the owner may have in the land upon which the buildings are located. **The taxing statutes look to the nature of the structure, whether it be permanent or not, rather than to the technical legal distinctions as to what constitutes real estate.... The property involved in this proceeding comes within the express provisions of these statutes,** and it would be sticking in the bark to hold that this valuable estate should be exempt from taxation, because the stave company was not the owner of the fee in the land demised to it for a term of years.

*Appeal of Pennsylvania Stave Company,* 236 Pa. at 102, 84 A. at 763 (emphasis added).

■ The vitality of the principle undergirding this holding—that the statutes of this Commonwealth authorizing the taxation of real estate are concerned with the particular nature of the property involved, not the means by which the property is owned—has not diminished with the passage of time, and is equally applicable in construing Section 201(a), as confirmed by our more recent decisions in *Independent Oil and Gas* and *Coolspring.* Consequently, the mere fact that the shopping center buildings and other improvements to the land in the instant matter were owned by Lessee as leasehold interests does not alter the fact that they are particular types of real estate enumerated in Section 201(a) and, thus, are proper subjects of taxation. *See Coolspring,* 593 Pa. at 349, 929 A.2d at 1157 (holding that leasehold interests in subsurface limestone were taxable real estate under Section 201(a) since limestone "falls within the term 'lands' listed in Section 201."). Indeed, were we to accept Appellant's suggested alternative construction of Section 201, it would result in a situation where, as Judge Wettick aptly observed, a tenant

under a long-term lease could build a Taj Mahal, or an Empire State Building, and such a structure would be wholly exempt from taxation merely because it was owned as a leasehold. Accordingly, we hold that the lower courts in this matter correctly determined that the shopping center buildings, parking lots, and the other improvements to the land constitute real estate under Section 201(a) which Allegheny County had the authority to tax.

Since we have determined that the buildings and improvements of the shopping center are "real estate" and, thus, subjects of taxation, we must next consider the question of whether their market value was properly determined by the lower courts, taking into account the impact of our decision in *Marple Springfield I*. Section 402 of the General County Assessment Law sets forth the various methodologies to be used in valuing real estate for purposes of taxation:

§ 5020–402 **Valuation of property.**

(a) It shall be the duty of the several elected and appointed assessors, and, in townships of the first class, of the assessors, assistant township assessors and assistant triennial assessors, to rate and value all objects of taxation, whether for county, city, township, town, school, institution district, poor or borough purposes, according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell. In arriving at actual value the county may utilize either the current market value or it may adopt a base year market value. In arriving at such value the price at which any property may actually have been sold either in the base year or in the current taxable year, shall be considered but shall not be controlling. Instead such selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the taxing district. In arriving at the actual value, all three methods, namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, must be considered in conjunction with one another. Except in counties of the first class, no

political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county.

72 P.S. § 5020–402.[26]

Half a century ago, in *North Park Village v. Bd. of Prop. Assessments, Appeals and Review*, 408 Pa. 433, 184 A.2d 253 (1962), a case in which our Court also considered a challenge to the assessment of a shopping center situated in Allegheny County and the land upon which it sat, our Court elucidated how Section 402 is to be applied to value real estate in Allegheny County for assessment purposes, in order to fulfill Section 402's clear directive that "all objects of taxation" be valued for assessment purposes:

> In Allegheny County, real estate is required to be assessed according to the actual value thereof. Act of May 22, 1933, P.L. 853, Art. IV, § 402, as amended by the Act of May 16, 1939, P.L. 143, § 1, 72 P.S. § 5020–402. This means the **entire** property and not merely its constituent elements. While it is perfectly legal for the assessor to enumerate the constituent parts of a single subject of taxation and the value placed on each, it is the reasonableness of the total assessment that is controlling. The total assessment of both land and improvements as a unit is the factor to be considered in determining the correctness of the assessment.

*North Park*, 408 Pa. at 436, 184 A.2d at 255 (emphasis original); *see also McKnight Shopping Ctr. v. Bd. of Prop. Assessments, Appeals and Review*, 417 Pa. 234, 235 n. 2, 209 A.2d 389, 390 n. 2 (1965) ("The proper assessment procedure is to value the property as a whole."); *Morris v. Bd. of Prop.*

**26.** As we explained in *Clifton, supra,* Allegheny County's indefinite utilization of 2002 as a base year violated the Uniformity Clause since it resulted in significant disparities in the ratio of assessed value to actual value between similar classes of properties throughout Allegheny County. Since we are concerned in the present appeal only with the proper methodology to be used in determining the **market** value of the buildings and improvements of the shopping center, and not with the correctness of the ultimate **assessed** value of this property, as determined by application of the base year method, our decision in *Clifton* does not affect the validity of Section 402 in this regard.

*Assessment, Appeals and Review,* 417 Pa. 192, 209 A.2d 407 (1965) (same).

▪▪▪▪▪ The term "actual value" as used in Section 402 means "market value." *In re Brooks Bldg.,* 391 Pa. 94, 97, 137 A.2d 273, 274 (1958). Market value is "a price which a purchaser, willing but not obliged to buy, would pay an owner willing, but not obliged to sell, taking into consideration all use[s] to which the property is adapted and might in reason be applied." *Deitch Co. v. Bd. of Prop. Assessment, Appeals and Review,* 417 Pa. 213, 217–218, 209 A.2d 397, 400 (1965) (quoting *Buhl Found. v. Bd. of Prop. Assessment, Appeals and Review,* 407 Pa. 567, 570, 180 A.2d 900, 902 (1962)). Thus, in an assessment appeal, "[e]vidence presented by appraisers must be directed to the market value of the property as a whole." *Rieck Ice Cream Co. v. Bd. of Prop. Assessments, Appeals and Review,* 417 Pa. 249, 256, 209 A.2d 383, 387 (1965); *see also Miracle Mile Shopping Center v. Bd. of Prop. Assessments, Appeals and Review,* 417 Pa. 243, 245, 209 A.2d 394, 395 (1965) ("The basic and controlling substantive issue in a real estate assessment appeal is the correctness of the total assessment of the property as a unit."). The "property as a whole" in this case, i.e., the real estate comprising the tax parcel at issue, consists of the land upon which the shopping center buildings and improvements sit, as well as the buildings and the improvements themselves; hence it is the market value of this entire parcel—land, buildings, and improvements—which Allegheny County was required to ascertain for assessment purposes.[27]

As detailed above, in his testimony at the assessment appeal hearing, the appraiser for the taxing bodies—Ackerman—did, in fact, render an opinion as to the market value of the entire tax parcel. Because of the nature of the lease arrangement, which divided ownership of the real property comprising the tax parcel, in order to determine this market value, Ackerman

27. As noted by the Commonwealth Court in its opinion: "Once the assessment is made, who pays the real estate taxes—the landowner or the tenant or subtenant—is not the concern of the taxing body but is determined by the parties in the terms of the lease or by some other private arrangement." *Tech One,* 974 A.2d at 1230.

deemed it necessary to separately determine a market value for Appellant's leased fee interest, and a market value of Lessee's leasehold interests, and to then aggregate both values. In arriving at his specific valuation of these separate interests, Ackerman considered all three methods of valuation set forth in Section 402—the cost, comparable sales, and income approaches—but he deemed the income approach to be the most "probative." N.T. Assessment Hearing, 4/21/05, at 57. As he elaborated in his appraisal report, "[t]his approach is normally heavily weighted in the valuation process and in any investor's decision to purchase an income producing property, since it is the investor's anticipation of a return on his investment and the associated risk, which are the main concerns in purchasing property of this type." Valuation by Mark D. Ackerman, 2/15/05, at 9. Consequently, as the market value of the leased fee and the leasehold interests, respectively, were, in this instance, principally determined by the income which the holder of each interest could expect to receive, Ackerman capitalized the contract rent paid to Appellant by Lessee, and capitalized the contract rent which Lessee collected from the tenants of the shopping plaza under its sublease arrangements with them. This is a standard methodology commonly used by real estate appraisers to value such interests. *See The Appraisal of Real Estate* 81–83 (12th ed. 2001) ("The valuation of a leased fee interest is best accomplished using the income capitalization approach.... The market value of a leased fee interest depends on how contract rent compares to market rent."; "Leasehold interests are typically valued using the income capitalization approach.... A leasehold interest may acquire value if the lease allows for subletting and the term is long enough so that market participants will pay something for the advantageous lease.").

Appellant's expert—Barna—also used the same direct capitalization method to calculate a market value for the leased fee, but, as we have discussed previously, the market value of the leased fee was the only interest Barna included in his valuation of the entire tax parcel. The essential crux of Appellant's present contention is that such a circumscribed

valuation was compelled by our Court's holding in *Marple Springfield I* which, according to Appellant's analysis discussed *supra*, precludes the consideration of the value of Lessee's leasehold interests in the total value of this tax parcel. Such an interpretation is, however, an overly expansive and incorrect reading of our decision therein.

In *Marple Springfield I*, the precise issue considered by our Court was whether our Court's previous holding in *In re Johnstown Assoc.*, 494 Pa. 433, 439, 431 A.2d 932, 935 (1981), that regulatory restrictions on the amount of rent which could be charged by the owner of a federally subsidized apartment building should be considered in appraising the property for taxation purposes, also applied in situations where rent restrictions were imposed contractually under the terms of a long-term lease, and, thus, should likewise be considered in assessing the value of property so encumbered.

The appellant in *Marple Springfield I* purchased a parcel of land in Delaware County upon which a shopping center was previously built. The prior owner of the land had entered into a long-term lease [28] with a department store which occupied a significant portion of the shopping center. Under the terms of this lease, the appellant, as successor in interest to the landowner, was guaranteed to receive a fixed monthly rental payment of $1.47 per square foot. The department store, in turn, subleased its leased space to other tenants at $3.04 per square foot.

The board of assessment valued the entire shopping center at $19,500,000 and assessed this amount against the appellant, which appealed to the trial court. The trial court reduced this assessment to $7,000,000 by using a capitalization of income approach based on the current rental income for the property, which was below market value. The Commonwealth Court reversed on the grounds that it considered the use of the capitalization of income method of valuation to be inappropriate when property is rented at a rate below fair market value. The Commonwealth Court also ruled that, in valuing the

---

**28.** The lease was 25 years in duration, and it granted the tenant an option to renew for an additional 50 years.

property, Section 402 required the property be treated as if it was in an unencumbered form, essentially ignoring the existence of the long-term lease. Our Court, in turn, reversed the Commonwealth Court.

In reversing, we noted that, in determining the market value of taxable property under Section 402, it was improper to ignore the existence of a long-term lease and its effect on the market value of the shopping center. We deemed the income restrictions from the lease to diminish the actual value of the property because they reduced the potential income a buyer could realize from the property. Further, we endorsed the use of the capitalization of income approach to valuation in situations where rental income for a commercial property is reduced below market value due to the existence of a long-term lease:

> The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate when the rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted aspect of commercial real estate transactions and their effects have a decisive impact on the price a buyer would pay for the affected property. To interpret the tax assessment statute as requiring valuation of property in hypothetical "une[n]cumbered form," as Commonwealth Court did, is to ignore the economic realities of commercial real estate transactions. Under the rationale we followed in *Johnstown Associates*, it was proper for the trial court to utilize the capitalization-of-income approach in this case as a means of establishing fair market value.

*Marple Springfield I*, 530 Pa. at 126–127, 607 A.2d at 710.

■ Nowhere in *Marple Springfield I* did we suggest, however, that, in valuing taxable real property as a whole, the value of any portion which is owned as a leasehold interest could be disregarded.[29] As we have made clear in our forego-

---

**29.** We expressly disapprove any contrary conclusion expressed or suggested in the Commonwealth Court decisions of *Marple Springfield II* and *Assid*.

ing discussion, real property does not lose its status as an object of taxation simply because it is owned under a lease. Our holding in *Marple Springfield I* did not alter this fundamental precept. *Marple Springfield I* merely established two basic principles applicable to valuing real property which is subject to a long-term lease: First, the "economic reality" of the existence of the lease must be considered by an appraiser in establishing the market value of property encumbered by a lease, since it will be a factor which affects the price which a purchaser of the property is willing to pay. Second, when the property generates income, the capitalization of income approach is an appropriate method to use to ascertain its value, and, in applying that method, the contract rent received under the lease is the relevant income stream which is to be capitalized, even if it is below prevailing market rental rates.[30] Where, as here, ownership of taxable real estate which comprises one tax parcel is divided into leased fee and leasehold interests, Section 402(a) still requires that the market value of the real estate as a whole be determined as this statutory provision unambiguously requires the valuation of "**all** objects of taxation." 72 Pa.S.A. § 5020–402(a) (emphasis added). Our holding in *Marple Springfield I* simply necessitates that, in conducting this valuation, the impact of the lease on the market value of the real estate owned as the leased fee and, also, on the market value of the real estate owned as a leasehold interest must be considered. Further, if the holder of the leased fee and the leasehold interest each receive rent pursuant to a contractual arrangement, it is appropriate, pursuant to *Marple Springfield I*, to employ the capitalization of income approach to value these interests utilizing the contract rent.

 Both of these requirements were followed by Appellee's expert, Ackerman, in performing his valuation. In valuing the land owned by Appellant as the leased fee, Ackerman specifically considered the impact of the ownership division

**30.** This is provided, of course, that the lease was the product of an "arm's length transaction" between the parties, untainted by any collusion or fraud.

and rent restrictions created by the lease on Appellant's ability to sell the land, and, in capitalizing the value of the income stream that an owner of the land could expect to receive, he utilized the contract rent payable by Lessee. Likewise, in valuing the shopping center buildings and other improvements owned by Lessee as leasehold interests, he considered the impact of Lessee's lease with Appellant on the value Lessee could expect to receive if it attempted to assign these leasehold interests to others, and, in capitalizing the value of the income stream generated by Lessee's leasehold interests, he used the contract rent which Lessee received under the subleases which it had entered into with tenants.[31]

It is true that, in this circumstance, as both experts testified, when valuing the real estate owned as the leased fee using the capitalization of income approach the value of the real estate owned by the lessee as a leasehold interest is not considered, because this calculation includes only the contract rent the holder of the leased fee receives under the lease and the value of the holder's reversionary interest in the buildings and improvements. However, as we have explained, the value of the real estate owned as the leased fee, alone, was not determinative of the value of the entire tax parcel in this matter, which consisted of **all** of the real estate owned as the leased fee and leasehold interests. Thus, we discern no error of law in the lower courts' use of the aggregate value of Appellant's leased fee interest in the land and the value of Lessee's leasehold interests in the shopping center buildings and other improvements, as determined by Appellee's expert, for the market value of the subject tax parcel in each of the tax years 2001–2005.

### B. Uniformity Clause

Next, we turn to the second issue on which we granted review—Appellant's challenge to the lower courts' determination that allowing real estate which is built and owned by a lessee pursuant to a long-term lease to be treated differently for purposes of taxation from real estate of the same type

---

**31.** Valuation by Mark D. Ackerman, 2/15/05, at 7, 9, 11, 18–19; N.T. Assessment Hearing, 4/21/2005, at 57, 62–64.

which is built and owned by the owner of the underlying land, based on the difference in the manner of ownership, would violate the Uniformity Clause of the Pennsylvania Constitution. We acknowledge the logic and force of the lower courts' alternative finding that treating real estate as exempt from taxation solely because it is owned as a leasehold interest rather than in fee simple would violate the Uniformity Clause of Article 8, Section 1 of our Commonwealth's Constitution. However, we do not need to presently pass on the propriety of this determination, since we have concluded that neither Section 201(a) nor 402 of the General County Assessment Law, nor our previous decision in *Marple Springfield I*, permits real estate to be classified differently for purposes of taxation based on the manner in which it is owned. Consequently, we will not address the second issue upon which we granted review. *See In re Farnese*, 609 Pa. 543, 569, 17 A.3d 357, 373 (2011) (under our Court's long standing precedent, we do not reach constitutional issues in a case if we can render a decision based on statutory grounds); *In re Interbranch Comm'n on Juvenile Justice*, 605 Pa. 224, 245, 988 A.2d 1269, 1282 (2010) (same).

### III. Conclusion

In conclusion, we hold that real estate remains subject to taxation under Section 201(a) of our Commonwealth's General County Assessment Law even if owned under a lease and, thus, Section 402 of that same law requires leased real estate, as an object of taxation, to be valued for purposes of taxation. Additionally, when ownership of real estate which comprises one tax parcel is divided as the result of a lease into leased fee and leasehold interests, and the real estate generates income to the holder of each respective interest, the capitalization of income approach described in *Marple Springfield I* is appropriate to value the real estate.

For the above stated reasons we affirm the order of the Commonwealth Court. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, McCAFFERY and ORIE MELVIN join the opinion.