**DOUGLASS VILLAGE RESIDENTS GROUP, by Joseph and Kay Gallagher, Harold Hillman and Donna Hillman**

v.

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.
Decided Jan. 27, 2014.

Edwin L. Stock, Reading, for appellant.

Paul A. Prince, Pottstown, for appellees.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

The Berks County Board of Assessment Appeals (Board of Assessments) appeals the order of the Berks County Court of Common Pleas (trial court) holding that real property taxes on garages and decks located in a mobile home community should have been assessed to the landowner and not the individual mobile homeowners. The Board argues that the taxes should be paid by the mobile homeowner. Discerning no error, we affirm.

Douglass Village is a mobile home community located in Douglass Township, Berks County. The land is entirely owned by Douglass Village, LLC (Landowner). Residents of Douglass Village purchase their mobile home from Landowner and then enter into a written lease agreement for rental of the site where the mobile home will be located. The initial lease has a two-year term and is renewable on an annual basis thereafter.

The lease stipulates that the homeowner must construct a one-car garage, but the homeowner can choose to construct a two-car garage. The garage is constructed by Landowner's contractor and paid for by the homeowner. The garage is constructed on a cement slab and attached to the mobile home. Disconnecting the mobile home from the garage requires removing nails, a wall stud and an "A-frame connector," which would not do significant damage to either structure. The garage cannot be moved without completely dismantling it.

Homeowners may also choose to construct a deck, either at the time of purchasing the mobile home or afterwards. The deck is constructed on cement piers that are permanently affixed to the property, but the deck is not connected to the home. The deck can be removed by cutting through the wood supports resting on the piers, but the concrete piers cannot be removed.

On March 29, 2011, the Douglass Village Residents Group (Residents Group)[1] filed an appeal with the Board of Assessments challenging their property taxes. The Board of Assessments conducted a hearing but took no action. The Residents Group then filed a mandamus action to force the Board of Assessments to rule. The trial court granted the Residents Group's motion for peremptory judgment on February 14, 2012, and ordered the Board to issue a decision. On March 19, 2012, the Board of Assessments denied the Residents Group's challenge to their assessments.

The Residents Group appealed and joined Landowner as a party.[2] The parties reached an agreement concerning the fair market value of the individual mobile homes and stipulated that the garages and decks should be taxable as realty. The parties requested that the trial court determine whether the real property taxes on the garages and decks should be imposed on the individual mobile homeowners or on Landowner. The trial court held that "the garages and decks are considered fixtures, taxable as realty, and ... the assessment of the tax should be borne by the owner of the land, Douglass Village, LLC." Reproduced Record at 45a. The Board of Assessments appealed.

On appeal,[3] the Board of Assessments argues that because the home-

---

1. The Residents Group consists of 63 mobile homeowners renting lots from Landowner.

2. Landowner did not appear at the hearing and is not participating in the instant appeal.

3. In reviewing a trial court's decision in a tax assessment appeal, we will reverse that deci-

owners paid for the garages and decks and consider these appurtenances part of their home, the property tax assessment for the garages and decks should be charged to the homeowners, not Landowner. The Residents Group counters that the garages and decks are permanently affixed to the land and cannot be moved without substantial damage. It also notes that the relevant statute defines "mobile home" as the home itself and not add-ons such as garages or decks.

Section 8821 of the Consolidated County Assessment Law requires the county to assess taxes on "all mobile homes and house trailers," which are paid by the owner of the mobile home. 53 Pa.C.S. § 8821(a).[4] The land on which the mobile home is located is assessed separately from the home. *Id.* Section 2 of the Manufactured Home Community Rights Act[5] defines the term "mobile home" by referencing two other statutes. The first reference is to the National Manufactured Housing Construction and Safety Standards Act, which defines a "manufactured home" as a structure that is transportable in one or more sections and built on a permanent chassis capable of serving as a home with or without a permanent foundation. 42 U.S.C. § 5402(6).[6] The second reference is to Section 102 of the Vehicle Code, which defines a "mobile home" as a trailer for living quarters or commercial purposes that is only incidentally operated on a highway. 75 Pa.C.S. § 102.[7] Based

---

sion only if the trial court committed an abuse of discretion, an error of law, or where its decision is unsupported by the evidence. When the issues on appeal are questions of law, the standard of review is *de novo* and the scope of review is plenary. *Tech One Associates v. Board of Property Assessment, Appeals and Review of Allegheny County*, 617 Pa. 439, 457–58, 53 A.3d 685, 696 (2012).

4. Section 8821(a) of the County Assessment Law states in its entirety:

(a) Duty.—It shall be the duty of the county assessment office to assess all mobile homes and house trailers within the county according to the actual value thereof. All mobile homes or house trailers which are subject to taxation as real estate as provided in this chapter shall be assessed and taxed in the name of the owner. The land upon which the mobile home or house trailer is located at the time of assessment shall be assessed separately and shall not include the value of the house trailer or mobile home included thereon.
53 Pa.C.S. § 8821(a).

5. Act of November 24, 1976, P.L. 1176, *as amended*, 68 P.S. § 398.2.

6. In its entirety, Section 603(6) of the National Manufactured Housing Construction and Safety Standards Act states:

"[M]anufactured home" means a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein; except that such term shall include any structure which meets all the requirements of this paragraph except the size requirements and with respect to which the manufacturer voluntarily files a certification required by the Secretary and complies with the standards established under this chapter; and except that such term shall not include any self-propelled recreational vehicle[.]
42 U.S.C. § 5402(6).

7. Section 102 of the Vehicle Code defines a "mobile home" as "[a] trailer designed and used exclusively for living quarters or commercial purposes which exceeds the maximum size limitations prescribed by this title for operation on a highway and is only incidentally operated on a highway." 75 Pa.C.S. § 102.

on these statutes, the trial court concluded that a "mobile home" must be capable of being transported, even if this is a rare occurrence. We agree.

The trial court also relied upon our Supreme Court's decision in *Tech One Associates v. Board of Property Assessment, Appeals and Review of Allegheny County,* 617 Pa. 439, 53 A.3d 685 (2012). In *Tech One,* a lessee constructed a shopping center, movie theater, and restaurant on land owned by the landlord. Under the terms of the long-term lease, the buildings and improvements were owned by the lessee. The Supreme Court held that the mere fact the lessee paid for and owned the improvements did not mean the improvements were taxable to the lessee. *Id.* at 699. Indeed, the Court held that the improvements were taxable to the landlord. *Id.* In the present case, the trial court noted that "[w]hile the holding in *Tech One* did not directly address the issue at bar, it was implicitly understood that the assessment law required that improvements to the land be taxed to the landowner as part of the land, regardless of ownership of the improvements." Trial court op. at 11–12. Again, we agree.

Both Section 8821(a) of the Consolidated County Assessment Law and *Tech One* support the conclusion that Landowner, and not the individual mobile homeowner, is responsible for the assessed taxes. As indicated above, county tax assessment offices are authorized to assess "all mobile homes and house trailers." 53 Pa.C.S. § 8821(a). No reference is made in the statute to additions or supporting structures like decks or garages. Therefore, as the trial court noted, in order for taxes on those appurtenances to be imposed, they must be considered part of the mobile home itself. However, mobile homes are synonymous with mobility, and nothing in the record suggests that either the garages or decks are easily mobile. Instead, the evidence at the trial court hearing revealed the opposite: the garages and decks are permanently affixed to the ground via cement blocks. Moving either appurtenance would require complete dismantlement. Additionally, neither the garages nor the decks are permanently attached to the mobile home.

In *Tech One,* our Supreme Court held that leasehold improvements made by a lessee are nevertheless taxable to the landowner as part of the land. *Tech One,* 53 A.3d at 699. In the present case, even though the improvements are paid for by the homeowners, Landowner is ultimately responsible for paying the assessed taxes. Therefore, the tax should be assessed to Landowner, Douglass Village, LLC, and not the individual mobile homeowners who comprise the Residents Group.

For these reasons, we affirm the trial court's order.

### ORDER

AND NOW, this 27th day of January, 2014, the order of Berks County Court of Common Pleas dated April 29, 2013, in the above-captioned matter is hereby AFFIRMED.