**Downingtown Area School District v. Chester County Board of Assessment Appeals**

C.P. of Chester County, No. 2012-11946

*Mark P. Thompson*, for appellant, Downingtown Area School District

*Sigmund J. Fleck*, for appellee, Chester County Board of Assessment Appeals

*Sharon DiPaolo*, for intervener, LTK Associates, LP

TUNNELL, *J.*, Oct. 29, 2013—Downingtown Area School District filed a timely appeal to this court from the decision of the Chester County Board of Assessment Appeals on October 17, 2012 not to change the assessment for the commercial property in question for tax year 2013 in the amount of $1,839,760.00.

This commercial property is encumbered by a long-term lease that is highly advantageous to the lessor and owner, appellant LTK., The lease provides LTK with significantly above-market rents, 58.5% above market, for the foreseeable future. Its terms could extend until 2070. The result is an income-producing property that is highly valuable in the market place to the willing buyer. This fact bears greatly on the court's determination of the "actual value" of the property for assessment purposes.

The appeal was consolidated for trial only with another property tax appeal, *Downingtown Area School District v. Chester County Board of Assessment Appeals, et al.*, No. 2012-11947, which raised generally the same legal issue, namely the effect of a long-term lease on the actual value of a property. Although each property involved a similar legal issue, and the parties' positions were supported by

the same expert witnesses, that property and its related appeal is factually the polar opposite of the one presently before the court. Encumbered by a long term lease for which there is no annual rent due to be paid for the next ten (10) years, its marketplace value as an income-producing property is significantly limited by its non-existent rent and necessarily so is its resultant actual value.

Hearings in the trial *de novo* were held on August 12, 2014 and September 18, 2014.

The court will issue separate decisions.

The court grants the appeal and increases the assessment, making the following:

## FINDINGS OF FACT

1. The Appellant is Downingtown Area School District ("School District").

2. The appellees are the Chester County Board of Assessment Appeals, and the Intervener, the taxpayer, LTK Associates, LP. ("LTK").

3. The property that is the subject of the appeal is located at 200 Eagleview Boulevard, Uwchlan Township, Chester County, PA 19341, Tax Parcel ID NO. 33-04G-0367.

4. The School District filed an appeal of the assessment for the subject property for tax year 2013.

5. On October 17, 2012, the Chester County Board of Assessment Appeals issued a decision sustaining the assessment for that tax year at $1,839,760.

6. On November 19, 2012, the School District filed an appeal of the decision of the Chester County Board of Assessment Appeals.

7. At this time the appeal covers three (3) tax years.

8. The applicable common level ratio for tax year 2013 is 59%.

9. The applicable common level ratio for tax year 2014 is 60.2%.

10. The applicable common level ratio for tax year 2015 is 57.7%.

11. The property consists of 2.659 acres of land, improved by a one-story building constructed in 2010 containing 14,280 square feet. There are 106 parking spaces.

12. LTK Associates owns the ground. It constructed and owns all improvements.

13. LTK Associates developed the property in accordance with plans and specifications of Walgreens, known as a "build to suit."

14. The construction of the building is masonry with concrete floors.

15. The building is configured for use by a single tenant.

16. The property is located in a neighborhood having commercial, office, industrial and retail uses.

17. Currently, the property is occupied by Walgreens Eastern Co., Inc. ("Walgreens"), as tenant, a related entity of Walgreens, Inc..

18. Walgreens has no subtenants and thus no rental stream of income itself.

19. Walgreens has occupied the property since construction in 2010 as a drug store, pursuant to a long-term lease with an initial term of 25 years, and seven

5-year options (the "Walgreens Lease"). If all options are exercised, the lease extends until 2070.

20. Under the long-term lease, Walgreens is responsible to pay the real estate taxes for the property.

21. Walgreens does not own the grounds, building or improvements.

22. LTK's interest in the property is a "leased fee."

23. Walgreens' interest in the property is a "leasehold interest."

24. About 15% of the square footage of the subject property is currently used as a pharmacy.

25. The remaining 85% of the square footage of the subject property is used for general retail purposes.

26. The School District called as its expert witness appraiser Patrick F. Noone.

27. Mr. Noone developed all three approaches to value: cost, sales, and income.

28. LTK called as its expert witness appraiser Mark R. Shonberg.

29. Mr. Shonberg also developed the three approaches to value: cost, sales, and income. Mr. Shonberg completed appraisals for only two of the approaches: cost and income.

30. Under the income approach, the experts essentially agreed on a value of LTK's leased fee — presenting values that were within $26,000.00 of each other — $7,256,800 (Noone) and $7,230,000 (Shonberg).

31. Because of its "above market" rent, Walgreen's leasehold interest has no market and thus no value, as conceded by both parties' experts.

## DISCUSSION

Chester County is a third class county. Accordingly, the Consolidated County Assessment Law applies to tax assessment appeals arising in Chester County. 53 P.S. Sec. 8801(b)(1)(i). Pursuant to the Consolidated County Assessment Law, "all subjects and properties made taxable by the laws of this Commonwealth...including all real estate" shall be valued and assessed. Consolidated County Assessment Law, 53 P.S. §8811(a)(1); *see also*, General County Assessment Law, 72 P.S. §5020-201. Under the Consolidated County Assessment Law, the county has the power to rate and value all objects of taxation according to the "actual value" thereof. 53 P.S. §8842; *see also, F&M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals*, 530 Pa. 451, 456, 610 A.2d 1, 3 (Pa. 1992).

The term "actual value" is defined as market value or fair market value, which in turn are defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to, which the property is adapted and might in reason be applied." *F&M Schaeffer*, 530 Pa. at 457, 610 A.2d at 3 (quoting *Buhl Found. v. Bd. of Prop. Assmt*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962)). In arriving at the "actual value" under 72 P.S. §5020-402(a), all three appraisal methods — cost, income and comparable sales approaches — must be considered in conjunction with one another. *Morelyn Plaza Ltd. Partnership v. Bucks County Bd. of Assessments*, 1997 WL 68578, *3 (Bankr. E.D.Pa. 1997), *aff'd*, 149 F.3d 1164 (3rd Cir. 1998).

In a tax assessment appeal, the court of common pleas must proceed *de novo. Murtagh v. County of Berks*, 715 A.2d 548, 552 (Pa. Cmwlth. 1998). In a *de novo* appeal, it is the trial court's duty "to independently determine the fair

market value of the parcel on the basis of the competent, credible and relevant evidence presented by the parties." *Green v. Schuylkill County Bd. of Assessment Appeals*, 565 Pa. 185, 196, 772 A.2d 419, 426 (2001); *Westinghouse Electric Corp. v. Bd. of Property Assessment*, 539 Pa. 453, 463, 652 A.2d 1306, 1311 (1995). The trial court also has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property. *Willow Valley Manor, Inc.*, 810 A.2d 720, 723 (2002). If the trial court is presented with conflicting testimony by equally credible experts, it is appropriate for the court to find that the fair market value of the property is "somewhere between the values presented by the competing experts." *Green*, 565 Pa. at 208, 772 A.2d at 433; *Westinghouse*, 539 Pa. at 464, 652 A.2d at 1312; *Trustees of the Int'l Brotherhood of Painters v. Bd. of Revision of Taxes*, 1997 WL 1433766 (Phila. C.P. 1997). The trial court is free to accept all, part or none of an expert's testimony in determining value. *West Mifflin Area School Dist. v. Bd. of Property Assessment*, 802 A.2d 687, 691 (Pa. Cmwlth. 2002).

In a tax assessment appeal, once the taxing authority has presented its assessment record into evidence, it has made out a *prima facie* case for the validity of the assessment by fixing the time when the burden of coming forward with evidence shifts to the appellant. *Deitch Co. v. Bd. of Property Assessment*, 471 Pa. 213, 221, 209 A.2d 397, 402 (1965). If the appellant produces sufficient proof to overcome its initially allotted status, the evidentiary value of the taxing authority's assessment record ceases and may no longer influence the court's determination of the assessment's correctness. *Green*, 565 Pa. at 195, 772 A.2d at 425-426. In that event, the appellant continues to carry the burden. *Westinghouse Electric Corp. v. Board of Property Assessment*, 539 Pa. 453, 460, 652 A.2d

1306, 1310 (1995). *See also* 16 McQuillin, The Law of Municipal Corporations §44.124 (3rd Ed.).

Finally, at the center of every real property assessment appeal is uniformity. The Uniformity Clause of the Pennsylvania Constitution provides that:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, §1.

The Supreme Court reminded recently, in *Friends of Pennsylvania Leadership Charter School v. Chester County Board of Assessment Appeals*, 61 A.3d 354 (Pa. 2014):

"Taxation, however, is not a matter of exact science; hence, absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton v. Allegheny Co.*, 969 A.2d 1197, 1210 (Pa. 2009) (citing *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985); *In re: Harleigh Realty Co.*, 149 A. 653, 654 (Pa. 1930) ("Scientific formulae, arithmetical deductions and mental contemplations, have small value in making assessments under our practical system of taxation.")). "Some practical inequalities are obviously anticipated, and so long as the taxing scheme does not impose substantially unequal tax burdens, rough uniformity with a limited amount of variation is permitted." *Id.*, at 1210-11 (citation omitted), *see also Delaware, L&W.R. Co.'s Tax Assessment*, 73 A. 429, 430 (Pa. 1909) (noting Uniformity Clause requires only "substantial uniformity, which means as nearly uniform as practicable in view of the instrumentalities with which and subjects upon which tax laws operate").

Determining the "Actual Value" of the Real Property

Encumbered by the Walgreens Lease

The existence of a long-term lease, which encumbers the present property and creates different interests in the property, impacts the court's value assessment, as discussed below.

Ownership Interests in Property

There are several types of ownership interests in property, two of which are involved in this case. "Fee simple" is the most complete form of ownership. It is absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat. The Appraisal of Real Estate, 14th ed. 2013 at 4, The Dictionary of Real Estate Appraisal, 5th ed. 2010 at 78. A "leased fee" interest is "[a]n ownership interest held by the landlord with the rights of use and occupancy transferred by the lease to others." *Tech One*, 617 Pa. at 445 n.8 (Pa. 2012)(quoting The Appraisal of Real Estate, 12th ed. 2001 at 83). *See also*, The Appraisal of Real Estate, 14th ed. 2013 at 72; The Dictionary of Real Estate Appraisal, 5th ed. 2010 at 111. A "leasehold" interest is "[t]he interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term under certain conditions." *Tech One*, 617 Pa. at 447 n. 13, 53 A.3d at 690 n. 13 (quoting The Dictionary of Real Estate Appraisal 4th ed. 2002 at 162); *see also*, The Appraisal of Real Estate, 14th ed. 2013 at 72; *see also*, The Dictionary of Real Estate Appraisal 5th ed. 2010 at 111.

In this case, the Walgreens Lease divides the subject property into two interests: a leased fee and a leasehold interest. Intervener LTK holds the "leased fee." Walgreens holds the "leasehold interest."

### Selection of An Appraisal Method

The School Board's expert, Patrick Noone, a licensed real estate appraiser in the Commonwealth of Pennsylvania, developed all three appraisal methods to determine the property's value. LTK's expert, Mark R. Shonberg, also a licensed real estate appraiser in the Commonwealth, likewise developed the three appraisal methods, although he ultimately rejected the sales approach as not applicable to the present situation.

Having considered the various approaches presented by the experts, the court concludes that the "income approach" to value should be given the most weight in its determination of the actual value of this income-producing property.[1] Under the "income approach" to value, each expert essentially agreed on the "leased fee" value, presenting the court with value estimates that were within $26,000.00 of each other — $7,256,800 (Noone) and $7,230,000 (Shonberg).

At the center of this dispute, therefore, is the question:

What, if any, value should be assigned to Walgreens' "leasehold interest" in the property it occupies?

The School District contends that Walgreens' leasehold interest is irrelevant, without value and should not be considered in the court's analysis. Noone, therefore, did not consider the leasehold interest, or assign it a value, in his income approach. LTK's appraiser, Mr. Shonberg, did consider the leasehold interest in his income approach, but contends that a "negative value" or a "leasehold detriment" should be assigned to that interest and necessarily reduce

---

1. "Income-producing property is purchased for the right to receive a future income stream." *Assessment Law and Procedure in Pennsylvania,* by Bert M. Goodman, esquire 14th ed. (2013) at 195.

the leased fee value by that amount. The court agrees that the leasehold interest must be considered in its value assessment. However, as both parties agree, this leasehold interest has no market and no value. It, therefore, does not impact the leased fee value agreed to by the experts.

Impact of a Long-term Lease on the Value of A Property

The question of whether or not a property subject to a long-term lease should be valued for assessment purposes in its "unencumbered" or "fee simple" form was addressed by the Pennsylvania Supreme Court *In re Appeal of Marple Springfield*, 530 Pa. 122, 706 A.2d 708 (1992) [*Marple Springfield I*]. The court concluded that it should not. According to the court, "to interpret the tax assessment statute as requiring valuation of property in hypothetical "unencumbered form," ...is to ignore the economic realities of commercial real estate transactions." *Id. Marple Springfield I* established two basic principles applicable to valuing real property encumbered by a long-term lease. First, the "economic reality" of the existence of the lease must be considered by an appraiser in establishing the market value of property encumbered by a lease as it will be a factor which affects the price which a purchaser of the property is willing to pay. Second, when the property generates income, the capitalization of income approach is an appropriate method to use in ascertaining its value when applying that method, the "contract rent" received under the lease is the relevant income stream which is to be capitalized, even if it is below prevailing market rental rates. *Id.*

In the recent case of *Tech One Associates v. Bd. of Property Assessment, Appeals and Review of Allegheny County*, 617 Pa. 439, 465, 53 A.3d 685, 700 (Pa. 2012), the court went further in addressing the impact of long-term leases on property values when it considered which

interests created by such a long-term lease were to be valued in assessing property taxes. It concluded that the market value of the property interests as a whole (both leased fee and leasehold) must be considered for tax assessment purposes. *Id.*

The appellant lessor in *Tech One* challenged the trial court's rejection of its appraisal method because it did not include consideration of the value of buildings and other improvements on the land, which were owned by the lessee under the terms of a long-term lease. The lessor argued that the improvements were not taxable real estate because they were owned by the lessee as leasehold interests. The *Tech One* Court summarized the facts before it as follows:

> The subject of this appeal is a 47.5 acre piece of land... upon which is situated a community shopping center..., a multi-screen movie theater, and a restaurant.... The land and buildings comprise one tax parcel....

> [Lessor] purchased the then-undeveloped land during the 1980's. In 1989, [Lessor] entered into a 50-year lease agreement...1990, with Lessee in a transaction that [was] found to be "arm's length." ...Lessee was given the right under this lease to construct buildings on the land and to make other improvements to the land, and, in the early 1990's, Lessee constructed the shopping center, movie theater, and restaurant, as well as their surrounding parking lots, lighting fixtures, and the access roads.

> The lease guarantees Lessee the first opportunity to purchase any part of [Lessor's]...interest in the premises which it elects to sell during the term of the lease, and it also gives Lessee a purchase option for the land on which the buildings sit, which it is entitled to exercise in the sixth month of year 49 of the lease. If Lessee fails

to exercise this purchase option, upon the termination of the lease, [Lessor]...has the right to retake possession of the entire premises....

Lessee was required to pay [Lessor]...$665,000 in rent annually for the entire term of the lease. The lease also required Lessee to pay all real estate taxes levied on the premises, and granted Lessee the option, at any time of its choosing, to assign all of the rights, title, and interests which it possessed under the lease, and, correspondingly, required any assignee to assume Lessee's obligations under the lease. Lessee was also permitted to sublease part or all of the premises to a tenant for any use permitted by the lease.

The court concluded that "the statutes of this Commonwealth authorizing the taxation of real estate are concerned with the particular nature of the property involved, not the means by which the property is owned... Consequently, the mere fact that the shopping center buildings and other improvements to the land in the instant matter were owned by Lessee as leasehold interests does not alter the fact that they are particular types of real estate enumerated in Section 201(a) and, thus, are proper subjects of taxation." Having determined that the leasehold interest in buildings and improvements at the shopping center were "real estate" and, thus, subjects of taxation, the remaining question for the *Tech One* Court to answer was whether their market value had been properly established, taking into account its earlier decision in *Marple Springfield I*.

The *Tech One* Court reasoned that, although not mentioned therein, *Marple Newtown I* did not preclude the consideration of a leasehold interest, but simply necessitated that, in conducting this valuation, the impact of the lease on the market value of the real estate

owned as the leased fee and, also, on the market value of the real estate owned as a leasehold interest must be considered. The *Tech One* Court further held that if the holder of the leased fee and the leasehold interest each receive rent pursuant to a contractual arrangement, it is appropriate, pursuant to *Marple Springfield I*, to employ the capitalization of income approach to value those interests utilizing the contract rent. In sum, the court held that "in conducting this type of valuation, the impact of the market value of the real estate owned as the leased fee and, also, the market value of the real estate owned as a leasehold interest must be considered." *Id.*

*Tech One* stands for the proposition that:

the..."economic reality test" be applied separately to the leasehold and the leased fee interests, rather than only to the leased fee. Thus, the "test" is to be used as a valuation tool for determining the market value of these real property interests. That is, what a willing buyer would pay a willing seller for the leasehold and what a willing buyer would pay a willing seller for the leased fee interest. Their combined value equals the total assessable real estate.

Assessment Law and Procedure in Pennsylvania, by Bert M. Goodman, Esquire 14th ed. (2013) at 190-91.

Stated in mathematical terms, and as developed in *Marple Newtown I* and *Tech One*, a property subject to a long-term lease is valued as follows:

Actual value = leased fee value (economic reality test + contract rent) + leasehold value (economic reality test + contract rent).

Although some of the facts presented in *Tech One* appear to differ from those here (*i.e.* "ownership" of the buildings on the land), the essential facts for valuation purposes are

the same — the lessee is a tenant occupying property by virtue of a long-term lease and thus has a "leasehold interest." Furthermore, nowhere in the decision did the Pennsylvania Supreme Court state that it was limiting its holding to just the facts presented. There were factual distinctions in *Marple Newtown I* and *Tech One*, yet those did not preclude the *Tech One* Court from applying the principles of *Marple Newtown I* in conducting its analysis. The same reasoning is applicable here. The concepts of leased fee and leasehold interests should apply to all leased properties, transcending the fact pattern presented in *Tech One*. The court, therefore, must consider both of the interests created by the Walgreens Lease.

Value of LTK's Leased Fee

Valuing the leased fee at issue here is the simpler of the two analyses. The opined that the actual value of the leased fee was between $7,230,000 (Shonberg) and $7,256,800 (Noone). The court assigns an actual value to the leased fee of $7,243,400, which represents the difference between those two values.

Value of Walgreens' Leasehold Interest

Valuing the "leasehold interest" at issue is a bit more complex. Although the Walgreens Lease divides the parcel into a leased fee and a leasehold interest, there is no sublease and necessarily no income stream that can be valued. Therefore, the "contract" rent portion of the leasehold equation set out in *Tech One* does not exist and has a "zero" value.

Turning to the "economic realty" part of the equation, although the parties disagreed about whether the leasehold interest should be valued as part of the court's analysis, they did agree on one important fact regarding its value.

Both sides agree that there is no market for a "negative leasehold" — the term used to describe a leasehold interest when property is leased at above-market rates. Because actual value considers the economic reality of the lease — what a willing buyer would pay a willing seller for the property interest here, the "leasehold" — when there is no willing buyer or seller, the market value of that leasehold must be $0. In fact, both sides acknowledged that a negative leasehold has no value. So, in this case:

Actual value = $7, 244,000 + $0

Actual value = $7, 244,000

LTK nonetheless argues that the court must assign a negative value to the leasehold interest and reduce the property's actual value by that amount for what it calls the leasehold "detriment" to Walgreens. According to Mr. Shonberg, there is a "leasehold detriment" to Walgreens because of the substantial rent it agreed to pay LTK. He values the detriment to be the variance "between the contract occupancy costs (rent and expense) and market costs". Mr. Shonberg then calculates a leasehold "detriment" totaling $ -3,362,485, reduces the leased fee value by that amount and opines the court should do so as well before reaching a final determination of the property's actual value.

Neither LTK nor Mr. Shonberg offered any legal support for this proposition.[2] LTK attempted to support its analysis by referring in its briefing to the general proposition that the sum of the fee subject to the leases and the leasehold interest "tend to be the same as the value of the property free and

---

2. LTK referred the court to discussions in appraisal materials of the concept of "negative leaseholds." However, nothing in those selections provided the court with any controlling case law endorsing LTK's analysis as presented. Although Mr. Shonberg testified that he has utilized such an analysis in bankruptcy proceedings, this is not such a proceeding.

clear" citing *In re Appeal of Cynwyd Investments*, 679 A.2d 304, n.10 (Pa. Commw. Ct. 1995), which in turn quoted The Appraisal of Real Estate 469 (7th ed. 1978)). That proposition does not apply in all situations as evidenced by the use of the term "tend." There can be exceptions to any rule and the present situation is necessarily one of those situations. As stated in the 14th edition of that same appraisal manual, The Appraisal of Real Estate 449, "the incremental value created by a lease premium can result in a leased fee value that exceeds the fee simple value." A long-term lease at above market value rents logically raises the value of the property as such property is valued by a purchaser for its ability to produce income. *Appeal of V.V.P. Partnership*, 167 Pa. Cmwlth. 282, 647 A.2d 990, 991 (1994), *app. den.* 540 Pa. 615, 656 A.2d 120 (1995).

The court's task in this case, as dictated by controlling case law, is to consider the impact of the Walgreens Lease on the property, not to assess the property in its "unencumbered" or "fee simple form." That is what the court has done.

## CONCLUSIONS OF LAW

1. The Board of Assessment Appeals established a *prima facie* case which was rebutted by the competent, credible and relevant evidence.

2. The competent, credible and relevant evidence was nonetheless conflicting in certain respects, and it is the court's obligation to weigh the same and determine the value of the property.

3. The actual value of the property is $7,243,400 as of August 1, 2012.

4. Application of the respective common level ratios to the actual value yields the following assessed values:

For January 1, 2013: $4,273,606.

For January 1, 2014: $4,360,527.

For January 1, 2015: $4,179,442.

An appropriate order follows.

### ORDER

And now, this 29th day of October, 2014, following a trial *de novo* in the above captioned matter by the undersigned, sitting without a jury, the court hereby grants the appeal of Downingtown Area School District, and determines the assessed value for Tax Parcel No. 33-04G-0367 as follows:

For January 1, 2013: $4,273,606.

For January 1, 2014: $4,360,527.

For January 1, 2015: $4,179,442.