IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Prospect Crozer LLC   :
Tax Assessment Appeals   :
  :   Nos. 1630-1633 C.D. 2019
Appeal of: Prospect Crozer LLC   :   Argued: March 10, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
        HONORABLE STACY WALLACE, Judge
        HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT         FILED: September 28, 2022


Prospect Crozer LLC (Taxpayer) appeals four orders[1] of the Court of Common Pleas of Delaware County (trial court) granting Chester-Upland School District (School District) and the City of Chester (City) (collectively, Taxing Authorities) an extension of time for making tax refunds to Taxpayer. On appeal, Taxpayer argues that the four orders are null and void because the judge issued them after he had forfeited his judicial office by assuming a position with the Philadelphia Board of Revision of Taxes (Philadelphia Tax Board). Taxpayer also challenges the orders on their merits, arguing that the trial court erred in granting Taxing Authorities a 36-month extension of time to refund the monies owed to Taxpayer because Taxing Authorities did not escrow Taxpayer's tax payments as required by the Consolidated County Assessment Law.[2] For the reasons that follow, we vacate the trial court's orders and remand the matter for further proceedings.

_____

[1] On May 12, 2020, the Court granted Taxpayer's application to consolidate appeals and consolidated the following matters: No. 1630 C.D. 2019, No. 1631 C.D. 2019, No. 1632 C.D. 2019, and No. 1633 C.D. 2019.

[2] 53 Pa. C.S. §§8801-8868.

Taxpayer owns several properties in the City, in Delaware County, Pennsylvania. At issue in this case are four properties: Community Hospital, the Medical Center, the Convent and a vacant lot. In combination, the four properties were assessed for the 2018 to 2020 tax years at $12,161,516. Taxpayer appealed the assessment to the City's Board of Assessment Appeals, which denied relief. Taxpayer then appealed to the trial court.

On September 28, 2018, after a hearing, the trial court ordered the combined assessment of $12,161,516 to be reduced to $732,250. Taxpayer Petition to Enforce at 3, ¶3; Reproduced Record at 45a (R.R. __). Neither the School District nor the City issued refunds of the taxes paid by Taxpayer.

In March of 2019, Taxpayer filed a petition to enforce the trial court's September 28, 2018, orders.[3] After a hearing, the trial court denied Taxpayer's petition to enforce but ordered the Tax Assessor to modify the assessment on the City's Tax Rolls for the four properties by close of business on May 24, 2019. Additionally, the trial court ordered Taxing Authorities to issue revised tax invoices to Taxpayer by May 28, 2019.

Taxing Authorities issued notices of refunds to Taxpayer. The School District's notice stated that it owed Taxpayer a refund of $717,692.69 for the 2018-2019 tax period, and the City's notice stated that it owed Taxpayer a refund of $339,209.25 for the 2018 tax year. The School District and the City each filed a petition for relief under the Consolidated County Assessment Law, asserting that an immediate refund payment was not possible. They each requested a 10-year

---

[3] Taxing Authorities argued that the September 28, 2018, orders did not require them to take any action.

extension of time for making the tax refunds. Taxpayer opposed the petitions and requested an evidentiary hearing, which was held on September 16, 2019.

In support of its petition, the School District presented testimony and documentary evidence. Peter Barsz, a certified public accountant, has served as the School District's receiver since June of 2016. He testified that the School District's annual budget is $147 million, which is principally funded by the Commonwealth; approximately $18 million of the annual budget is funded by real estate tax revenue. For the 2018-2019 school year, the School District was facing a deficit in the amount of $4.3 million. Notes of Testimony, 9/16/2019, at 63; R.R. 280a. Barsz testified that the School District pays its vendors on an installment basis. For example, its $1.2 million insurance invoice is paid over a period of eight months. Barsz opined that the School District can only pay the refund due to Taxpayer in installments.

On cross-examination, Barsz acknowledged that the School District owed Taxpayer $717,692.69 and that it had not escrowed any of Taxpayer's tax payments. Instead, they were deposited into the School District's general fund and spent on school operations. Barsz agreed that the School District is allowed to incur debt and will do so in connection with the construction of a $30 million charter school.

The City also presented testimony and documentary evidence. Nafis J. Nichols, the City's Chief Financial Officer, testified. He explained that since 1995 the City has been governed under the statute known as Act 47[4] and that a coordinator had been appointed to develop a recovery plan. Nichols presented the City's 2018

---

[4] Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, No. 47, *as amended*, 53 P.S. §§11701.101-11701.712 (Act 47). An Act 47 recovery plan takes into account a number of factors relevant to alleviate the financially distressed status of the municipality. Section 241 of Act 47, 53 P.S. §11701.241.

3

financial statement, showing that the City had operated at a loss. Notably, the City was unable to make a payment to its pension fund in 2018.

Nichols explained that where there has been an overpayment of real estate taxes, a memo is issued to the City's Finance Department to issue a refund. When the City lacks the funds to refund a taxpayer in cash, it pays the refund by issuing credits against future taxes. Nichols offered the example of another taxpayer, Kimberly Clark, to which the City owed a tax refund of $126,497.31. To meet that obligation, the City paid $25,000 in cash, and the remainder of the refund was paid in the form of a credit against future taxes. Nichols testified that at present, the City cannot pay the refund owed to Taxpayer in cash.

On cross-examination, Nichols testified that he did not know that the City had a statutory obligation to escrow tax payments when a taxpayer has made a tax payment under protest. He acknowledged that Taxpayer paid $416,868.39 in real estate taxes, and that to his knowledge, the City did not place any of that amount into escrow.

On October 11, 2019, the trial court granted Taxing Authorities an extension of time for making refunds to Taxpayer.[5] Instead of the requested 10-year extension, the trial court gave Taxing Authorities three years to refund Taxpayer's overpayment. Taxpayer filed these instant appeals.

On appeal,[6] Taxpayer raises two issues. First, Taxpayer argues that its application to vacate the orders should be granted because the presiding judge, the

---

[5] On November 1, 2019, the trial court entered an amended order, dated October 28, 2019, to correct a typographical error in the original order relating to the City.

[6] This Court's review in tax assessment matters determines whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Douglass Village Residents Group v. Berks County Board of Assessment Appeals*, 84 A.3d 407,

4

Honorable John L. Braxton, held a position on the Philadelphia Tax Board at the same time he served as a senior judge on these cases.[7] This dual service was improper and deprived the assigned judge of authority to issue the extension orders. Second, in the alternative, Taxpayer argues that the trial court erred by granting Taxing Authorities' petitions because they did not escrow a portion of the disputed tax payments, as required by Section 8854(c) of the Consolidated County Assessment Law, 53 Pa. C.S. §8854(c).[8]

Article V, Section 17(a) of the Pennsylvania Constitution prohibits a judge from holding "an office or position of profit in the government of the United States, the Commonwealth or any municipal corporation or political subdivision thereof[.]" PA. CONST. art. V, §17(a). In its application to vacate, Taxpayer asserted that Senior Judge Braxton held a "position of profit" with the Philadelphia Tax Board at the same time he acted as a judge on the instant tax appeals, which rendered

---

408 n.3 (Pa. Cmwlth. 2014). Our standard of review for questions of law is *de novo*, and our scope of review is plenary. *Id*.

[7] On March 6, 2020, Taxpayer filed an application to vacate the trial court's orders for the stated reason that the four orders were null and void. The Court referred the application to the merits panel.

[8] It states, in relevant part, as follows:

> The appellant may protest the taxes due. The protest must be in writing addressed to the tax collector. It shall be the duty of the tax collector to notify the taxing districts of any payment under protest by delivering to them a copy of the protest. *The taxing districts shall be required to segregate 25% of the amount of the tax paid in a separate account and shall not be permitted to expend any portion of any segregated amount unless it first petitions the court, alleging that the segregated amount is unjustly withheld . . . .* Upon final disposition of the appeal, the amount of the overpayment found to be due the appellant as a refund shall also be a legal setoff or credit against any future taxes assessed against the appellant by the same taxing district. *If a taxing district alleges that it is unable to credit all of the refund due in one year, the court, upon application of either party, shall determine over what period of time the refund due shall be made and in what manner.*

53 Pa. C.S. §8854(c).

his four orders null and void. Taxing Authorities responded that Taxpayer's application to vacate was untimely filed and, further, that the Pennsylvania Supreme Court approved Senior Judge Braxton's completion of this judicial assignment after his appointment to the Philadelphia Tax Board.

Taxpayer supported the application to vacate with affidavits and public record searches that it attached thereto. Following argument before the merits panel, the Court concluded that a record was needed on Taxpayer's assertion of incompatible service and Taxing Authorities' response thereto. Accordingly, the Court entered an order remanding this matter to the trial court with directions to develop an evidentiary record on the following factual questions:

> (1) The date on which Senior Judge Braxton assumed his position on the Philadelphia Board of Revision of Taxes and began receiving compensation therefor;
>
> (2) Whether Senior Judge Braxton's continued work on the above-captioned assessment appeals of Prospect Crozer, LLC while simultaneously serving on the Philadelphia Board of Revision of Taxes was approved in writing or in some other way by the Pennsylvania Supreme Court; and
>
> (3) The date on which Prospect Crozer, LLC learned that when Senior Judge Braxton issued the orders in the above-captioned appeals, he had already assumed his position with the Philadelphia Board of Revision of Taxes.

Court Order, 3/17/2022.

On April 20, 2022, the trial court conducted a hearing. The record consists of a stipulation of the parties; Taxpayer's public record searches and affidavits; and the testimony of Senior Judge Braxton. A summary of the parties' stipulation, the affidavits, and Senior Judge Braxton's testimony is set forth in *In Re: Appeal of Prospect Crozer LLC from the Decision of the Board of Assessment Appeals of Delaware County, PA*, __ A.3d __ (Pa. Cmwlth., Nos. 1596-1599, 1600-

6

1629 C.D. 2019, filed September 28, 2022) (*Appeal of Prospect Crozer*). Thereafter, on May 4, 2022, the trial court issued an order finding, *inter alia*, that Senior Judge Braxton began to receive compensation for his position with the Philadelphia Tax Board on June 16, 2019, and ended his judicial service on January 24, 2020. The trial court credited Senior Judge Braxton's testimony that he notified the Administrative Office of Pennsylvania Courts of his appointment to the Philadelphia Tax Board and received approval to complete his outstanding judicial assignments. Taxpayer sought reconsideration, but it was denied.

After receipt of the trial court's May 4, 2022, order, the parties filed supplemental briefs with this Court to address the trial court's order.

Taxpayer's claims under Article V, Section 17(a) of the Pennsylvania Constitution, PA. CONST. art. V, §17(a), are identical to those it raised in *Appeal of Prospect Crozer*, __ A.3d at __, slip op. at 17-29. There, we held that Senior Judge Braxton forfeited his judicial office no later than June 16, 2019, when he began to receive compensation in his position of profit on the Philadelphia Tax Board. Because Senior Judge Braxton's orders were issued after he forfeited his judicial office, they were null and void. For all the reasons set forth in *Appeal of Prospect Crozer*, __ A.3d at __, slip op. at 17-29, which is incorporated by reference herein, we grant Taxpayer's application to vacate the trial court's orders.

Accordingly, we remand the matter for a new opinion by a new jurist.[9] On remand, the trial court may supplement the existing record if deemed appropriate but may not supplant the existing record.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon did not participate in the decision in this case.

---

[9] Taxpayer's other issue involves factual questions about whether, and which, taxes were paid under protest. This should be determined on remand.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Prospect Crozer LLC  :
Tax Assessment Appeals             :
                                   :   Nos. 1630-1633 C.D. 2019
Appeal of: Prospect Crozer LLC     :

**ORDER**

AND NOW this 28th day of September, 2022, Prospect Crozer LLC's Application to Vacate Orders on Appeal Because of Structural Error is GRANTED, and the amended orders of the Court of Common Pleas of Delaware County, dated October 28, 2019, are VACATED. This case is REMANDED for a new decision in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita